**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3291
_____

J.P.S., a/k/a S.J.P.,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A99-473-409)
Immigration Judge:  Honorable Margaret R. Reichenberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 17, 2010
Before: SLOVITER, JORDAN and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 22, 2010)
_____

OPINION
_____

PER CURIAM

J.P.S., a Colombian citizen, petitions for review of the Board of Immigration

Appeals's ("BIA") decision affirming the denial of his applications for asylum,

withholding of removal, and protection under the United Nations Convention Against

Torture ("CAT").[1]  For the following reasons, we will grant the petition for review.

I.

J.P.S. entered the United States in August 2006 and was immediately taken into custody.  An asylum officer determined that he had a credible fear of persecution and released him on bond to pursue his application for asylum, withholding of removal, and protection under the CAT.

At his removal proceedings, J.P.S. claimed that he had been persecuted due to his homosexuality by the Colombian police and Fuezas Armadas Revolucionarias de Colombia ("FARC").[2]  He testified that, in 2004, drug dealers associated with FARC moved into his Medellin neighborhood, and that after identifying him as a homosexual, they verbally harassed and threw stones at him.  In early 2005, J.P.S.'s brother, Ruben, informed the Medellin police that FARC had infiltrated the neighborhood and that its members were dealing drugs.  J.P.S. testified that Ruben informed on FARC in an effort to stop them from harassing him.  FARC members instead shot Ruben to death.  Two weeks later, J.P.S.'s second brother, Luis, drunkenly confronted FARC members

---

[1]  J.P.S. has not challenged, before the BIA or this Court, the Immigration Judge's denial of his CAT claim.

[2]  "FARC is a leftist guerilla organization that originally was established to serve as the military wing of the Colombian Communist Party."  Tapiero de Orejuela v. Gonzales, 423 F.3d 666, 668 (7th Cir. 2005).  Where FARC exercises control, it "in effect displaces civil government.  Even where FARC does not fully displace the civilian government, it nevertheless operates without [sic] impunity as a result of a reign of terror. . . ."  Id.

2

regarding the murder of Ruben and their harassment of J.P.S. FARC members responded by killing Luis. After Luis's murder, FARC members began threatening J.P.S. by stating, "faggot, faggot, what happened to your brother is going to happen to you," and that they were going to "put a stick in [his] behind."

Meanwhile, in early 2005, after gathering in a public park known for tolerance of homosexuality, J.P.S. and several friends were taken into police custody. J.P.S. testified that he was held at the police station for approximately twelve hours and was verbally abused for being gay—the police stated that they "didn't want to see the faggots" and that they "had to clean their neighborhoods." The police also threw cold water on him and forced him to sit in wet clothes. Before he was released, he was told that if he or his friends spoke out about what had happened, they were the ones who "were going to suffer."

In December 2005, J.P.S. moved to Bogota because the situation in Medellin was "becoming unbearable." He chose Bogota because a friend in the same profession was able to find work there. J.P.S. testified that although Bogota was more progressive than Medellin, it was not without anti-gay bias and violence. He recounted one instance in which a friend was killed after leaving a disco with a young man. He also asserted that he was forced to run into discos to avoid confrontations with anti-gay groups.

After spending one month in Bogota, J.P.S. returned to Medellin to help care for his mother. In Medellin, the "aggressions" by FARC "intensified." They told him that if

3

he did not want to end up like his brothers, he must either pay a weekly quota or deal drugs for them. If he complied with their demands, they would allow him to "be gay and in peace." When J.P.S. ignored their demands, FARC members began physically assaulting him. From April to August 2006, J.P.S. was assaulted eight-to-ten times while at the bus stop, walking to and from his house, and in front of his house. The most serious incident occurred at the door to his house when FARC members hit him, kicked him in the stomach, and scraped his hand with a razor. Soon after he was attacked at the bus stop, J.P.S. left for the United States.

The Immigration Judge ("IJ") denied J.P.S.'s requests for relief, concluding that the incidents he described did not rise to the level of persecution and that evidence of current country conditions undermined his claimed fear of future persecution. The BIA affirmed the IJ's decision and dismissed J.P.S.'s appeal. Although the IJ did not specifically make such a finding, the BIA assumed that J.P.S. was mistreated on account of the protected ground of his sexual orientation, but agreed that J.P.S.'s experiences were not sufficiently severe to constitute past persecution. The BIA also concluded that the IJ did not err in finding that J.P.S. failed to demonstrate a well-founded fear of future persecution.

J.P.S., through counsel, now petitions for review of the BIA's final order of removal.

II.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. §

1252(a)(1). We review the BIA's decision for substantial evidence, considering whether

it is "supported by reasonable, substantial, and probative evidence on the record

considered as a whole." Balasubramanrim v. I.N.S., 143 F.3d 157, 161 (3d Cir. 1998)

(internal quotation and citation omitted).[3] The decision must be affirmed "unless the

evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft,

333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir.

2001)).

An applicant for asylum has the burden of establishing that he is unable or

unwilling to return to his home country "because of persecution or a well-founded fear of

persecution on account of race, religion, nationality, membership in a particular social

group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A). Persecution "connotes extreme

behavior, including threats to life, confinement, torture, and economic restrictions so

severe that they constitute a threat to life or freedom." Ahmed v. Ashcroft, 341 F.3d 214,

217 (3d Cir. 2003) (internal quotation and citation omitted).

Here, the BIA agreed that the IJ properly denied J.P.S.'s claims because his

---

[3]      J.P.S. incorrectly asserts that the BIA substantially adopted and affirmed the
decision of the IJ and that we should thus review the IJ's and the BIA's decisions. See
Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Because the BIA did not defer to the
IJ's findings or adopt the IJ's opinion, we review the BIA's decision only. See Abdulai v.
Ashcroft, 239 F.3d 542, 545, 549 (3d Cir. 2001).

5

experiences did not rise to the level of persecution.  See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005).[4]  The BIA relied, in large part, on the lack of severity of J.P.S.'s injuries.  Concentrating solely on the lack of severe physical harm, however, minimized the nature of the situation and ignored much of the evidence supporting J.P.S.'s claim.  See Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (requiring the BIA to demonstrate that it has "reviewed the record and grasped the movant's claims).  For example, the BIA did not acknowledge that the people who physically and verbally assaulted J.P.S. had murdered two of his brothers.  While J.P.S. conceded that Ruben was killed because he reported FARC's drug dealing to the police, he testified that Luis was killed at least in part because he tried to defend him.  Regardless of why J.P.S.'s brothers were killed, their murders made FARC's subsequent targeting of J.P.S. particularly foreboding.  Thus, when viewed in a wider context, FARC's constant threats and repeated physical attacks on J.P.S.—even if they did not result in life-threatening injuries—may rise to the level of persecution.  See De Santamaria v. Att'y Gen., 525 F.3d 999, 1009 (11th Cir. 2008); cf. Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (stating that isolated incidents that do not result in serious injury do not rise to the level of persecution).  The BIA's failure to acknowledge significant aspects of J.P.S.'s claim renders us unable to adequately to consider whether substantial evidence supports its

---

[4]     Because the BIA made no explicit finding as to J.P.S.'s credibility, we proceed as if his testimony were credible.  Kayembe v. Ashcroft, 334 F.3d 231, 235 (3d Cir. 2003).

determination that J.P.S. failed to establish past persecution.  See Chavarria v. Gonzales, 446 F.3d 508, 517-18 (3d Cir. 2006) (remanding after determining that the BIA's mischaracterization and understatement of the evidence established that its decision was not supported by substantial evidence); Chen v. I.N.S., 359 F.3d 121, 127-28 (2d Cir. 2004); Sevoian, 290 F.3d at 178.[5]

For the foregoing reasons, we conclude that the BIA did not adequately consider J.P.S.'s application for asylum and withholding of removal.  We therefore cannot accept its determination that he failed to establish past persecution.[6]  Accordingly, we will grant J.P.S.'s petition for review, vacate the BIA's decision, and remand the case for further proceedings.

---

[5]     We do, however, conclude that substantial evidence supports the BIA's decision that J.P.S.'s detention by the Colombian police, in and of itself, does not rise to the level of persecution.  See Kibinda v. Att'y Gen., 477 F.3d 113, 119 (3d Cir. 2007).

[6]     Because we have determined that the BIA's decision regarding past persecution is not supported by substantial evidence, we do not consider its determination as to J.P.S.'s fear of future persecution.        7